**Charlene KNAPP, Plaintiff,**

v.

**CONVERGYS CORPORATION and Convergys Customer Management Group, Inc., Defendants.**

**No. 4:00–CV–2026 JCH.**

United States District Court, E.D. Missouri, Eastern Division.

July 17, 2002.

Jerald A. Hochsztein, T. Patrick Deaton, Jr., Newburger and Vossmeyer, St. Louis, MO, for plaintiff.

Laura M. Jordan, Thompson Coburn, St. Louis, MO, Mary M. Bonacorsi, Thompson Coburn, St. Louis, MO, for defendants.

## *MEMORANDUM AND ORDER*

HAMILTON, District Judge.

This matter is before the Court on Convergys Corporation and Convergys Customer Management Group, Inc.'s ("Convergys's") Motion for Sanctions and to Dismiss and/or Strike Plaintiff's Complaint ("Motion for Sanctions"), filed June 18, 2002. (Doc. No. 30). The Court heard oral argument on this motion on July 11, 2002, and now sets forth the following ruling.

Plaintiff filed her Complaint in this matter on December 22, 2000, alleging sexual harassment in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count I), and the Missouri Human Rights Act, R.S.Mo. § 213.010 *et seq.* (Count II). (Doc. No. 1). In her Complaint, Plaintiff claims, *inter alia,* that she has suffered "emotional pain, suffering, inconvenience, mental anguish, loss of consortium, and loss of enjoyment of life." (Compl., ¶ 20).[1]

In its Motion for Sanctions, Convergys claims that Plaintiff has repeatedly lied under oath and obstructed discovery, by maintaining she was unemployed from November, 1999 until March, 2001. (Memorandum in Support of Convergys's Motion for Sanctions and to Dismiss and/or Strike Plaintiff's Complaint ("Convergys's Memo in Support"), P. 2). Specifically, Convergys notes that in interrogatories submitted to Plaintiff on April 13, 2001, Convergys asked about her employment history, as follows:

2. Specifically describe your employment or work for the last ten (10) years by providing the following:

(a) The names, addresses and nature of business of each employer with whom you have been employed and the dates of each such employment; . . .

(d) Whether you ever complained of discrimination during your employment and, if so, describe in detail the circumstances under which such a complaint was made, against whom the complaint was lodged, and the resolution of that complaint; and

(e) Whether you ever complained of harassment of any type during your employment and if so, describe in detail the circumstances under which such a complaint was made, against whom the complaint was lodged, and the resolution of that complaint; . . .

(Plaintiff's Answers to Defendant Convergys Customer Management Group's First Set of Interrogatories Directed to Plaintiff, attached as Exh. A to Doc. No. 35, No. 2). In her response, Plaintiff provided employment information for positions she held from August, 1990 to December, 1995; from September, 1998 to November, 1999; and from March, 2001 to the present. (*Id.*). Plaintiff provided the following additional information during her October 16, 2001 deposition:

Q: Okay. And so you quit [Convergys] and did you get another job?

A: Yes, I did.

Q: Okay. And where did you go to work?

A: Out at Lombardo's Catering and Deli. . . .

Q: Okay. And how long did you work for Lombardo's?

A: Approximately a month.

Q: Okay. And then what did you do?

A: Stayed home with my daughter. . . .

Q: Okay. So then you worked for Lombardo's for a month, and then you stopped work to stay home with your daughter some more, right?

A: Right.

Q: Okay. And then at some point in time, you went back to work?

A: Correct.

Q: Which would have been when?

A: March 27th of 2001.

Q: Okay. So you took all of 2000 off?

A: Yes.

Q: Okay. So you took the balance of '99 and most of the year 2000—

A: Right.

---

1. The Court denied Plaintiff's request for recovery of lost wages in its April 18, 2002 Memorandum and Order. (Doc. No. 24).

Q:—to stay home with your little girl?

A: Right....

Q: Okay. Did you try to get employment during that period of time from the fall of '99 after you left Lombardo's until you went back to work at Frontenac Cleaners this past March or did you just want to stay home and be with your daughter?

A: Stay home, take care of the house and—but I had to find a job where I can move. I can't be confined in one area.

(Knapp Deposition, attached to Convergys's Motion for Sanctions as Exh. B, PP. 156, 158, 159–60).

On May 24, 2002, Convergys received an anonymous telephone call indicating that Plaintiff had lied about her employment history during these proceedings. (Convergys's Memo in Support, P. 4). The caller advised that during the time Plaintiff testified she was unemployed, she was actually working as a nude exotic dancer at Roxy's Nightclub in Brooklyn, Illinois. (*Id.*). Convergys began an independent investigation of this allegation, and on June 12, 2002, obtained the following affidavit from Naham King, Plaintiff's former supervisor at Roxy's:

> I am presently a director for I.E.C. and work at PT's in Centerville. Prior to this position I was Sr. Director for Roxy's in Brooklyn, IL. While I was Director at Roxy's Charlene Knapp a.k.a. as (Mercedes) was an independant (sic) contractor as an entertainer. Her main job function was to remove her clothing while dancing in the nude on our stages. She also performed private dances for customers. She performed at the club from approx. late 1999 to early 2001. While performing these duties I had multiple incidents where she became intoxicated while performing. While intoxicated she would become disoriented and accuse customers and sometimes other staff members of doing things that had never happened, such as grabbing her or licking her, rude comments. A few times she would make these statements I would be observing that these incidents were not happening. She would then say I was lying and get into her car intoxicated and drive away. She terminated her contract with I.E.C. one day and got into her

car intoxicated and left. I haven't seen or heard from her since.

(King Affidavit, attached to Convergys's Motion for Sanctions as Exh. D). On June 17, 2002, in response to questioning from Convergys, Plaintiff confirmed her employment at Roxy's, as follows:

> 1. I am the Plaintiff in the above-captioned matter.
>
> 2. In my answer to Interrogatory # 2 of Defendants' First Set of Interrogatories concerning my employment during the past ten years, I did not mention that, from approximately November 1999 until August 2000, I worked as a dancer at Roxy's Nightclub in Brooklyn, Illinois.
>
> 3. Similarly, in the deposition I gave on October 16, 2001 in this case, I left out reference to that employment.
>
> 4. I did not intend to do wrong by not mentioning my working at Roxy's. I find that episode in my life embarrassing, even though I did not do anything illegal. I never want to do that kind of work again. My embarrassment about the dancing I did at Roxy's made it impossible to admit working there when asked by the company's attorneys.
>
> 5. I understand this was a mistake on my part. I apologize to the Court, the company, and the company's attorneys for my error.

(Knapp Affidavit, attached to Convergys's Motion for Sanctions as Exh. E). Plaintiff submitted a supplemental affidavit in connection with her Response to Convergys's Motion for Sanctions, in which she testifies in relevant part as follows:

> 3. While I was working at Roxy's Nightclub, there were occasions when I made complaints to the management of the club when customers or other staff members touched me inappropriately. However, contrary to what Naham King said in his affidavit, I made such complaints only when they were true. I never made any false accusations against any customer or other staff member.
>
> 4. On occasions when I reported inappropriate touching to club management, club officials would watch the offender for the

remaining time the offender remained in the club.

5. While I drank beer in the club, I also drank soda, coffee and juice. I never became so intoxicated that my judgment was impaired. In particular, my drinking beer never caused me to make any false accusations about customers or staff members touching me inappropriately.

(Knapp Supplemental Affidavit, attached to Plaintiff's Response to Convergys's Motion for Sanctions as Exh. 2).

In light of the above, the Court finds that Plaintiff willfully withheld information directly responsive to Convergys's interrogatory and deposition questions concerning her employment history. The record before the Court contains clear and convincing evidence, in the form of affidavit testimony from Plaintiff herself, that she worked as an exotic dancer at Roxy's during the time she claimed to be unemployed.

Having found that Plaintiff lied both during her deposition and in her answers to interrogatories, the Court now considers Convergys's argument that Plaintiff's actions require that she receive the ultimate sanction—striking of her pleadings and dismissal of her case with prejudice. "The Court's authority to sanction [Plaintiff] for her discovery abuse flows from its inherent power to 'manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases,' including 'fashion[ing] an appropriate sanction for conduct which abuses the judicial process.'" (Memorandum and Order of Judge Webber, Case No. 4:98CV1884ERW, May 26, 2000, P. 8, quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (internal citations omitted)). Further, the Eighth Circuit has held that, "[w]hen a litigant's conduct abuses the judicial process, dismissal of a lawsuit is a remedy within the inherent power of the court." *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694 (8th Cir.2001), citing *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir.1992). More specifically, the Eighth Circuit has stated that the striking of a party's pleadings, "is within the range of appropriate sanctions when a party engages in a pattern of deceit by presenting false and misleading testimony under oath." *Martin*, 251 F.3d at 694, citing *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1021 (8th Cir.1999).

As detailed above, the Court has found by clear and convincing evidence that Plaintiff gave perjurious answers in her interrogatories and during her deposition. The Court further finds that to strike Plaintiff's pleadings and dismiss her case is the appropriate sanction for her deliberate and continued abuse of the discovery process. *See Martin*, 251 F.3d at 694–95 (holding the sanction of dismissal is appropriate where the district court finds (1) clear and convincing evidence that the misconduct occurred, and (2) that a lesser sanction would not sufficiently punish and deter the abusive conduct, while allowing a full and fair trial on the merits). The Eighth Circuit has applied this severe sanction in similar cases of serious discovery abuse. *See Martin*, 251 F.3d at 695 (affirming district court's striking of plaintiff's pleadings as a sanction for her repeated perjury); *Carey*, 186 F.3d at 1021 (affirming district court's striking of defendants' pleadings when defendants repeatedly lied during the discovery process); *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1049 (8th Cir. 1991) (dismissal appropriate when plaintiff repeatedly lied at depositions and in pleadings about his use of defendant's product).

"Furthermore, the Court believes that dismissal is the only sanction that will effectively punish [Plaintiff], lessen the prejudice to [Convergys], and protect the integrity of this proceeding." (Memorandum and Order of Judge Webber, Case No. 4:98CV1884ERW, May 26, 2000, P. 9, citing *Carey*, 186 F.3d at 1022 ("The district court is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances"); *Shepherd v. American Broadcasting Co., Inc.*, 62 F.3d 1469, 1478 (D.C.Cir. 1995) (requiring district courts to justify a sanction of dismissal or entry of default with not only clear and convincing evidence of misconduct but also "a specific, reasoned explanation for rejecting lesser sanctions, such as fines, attorneys' fees, or adverse evidentiary rulings")). The scheduled trial date for this matter has already passed, and this

Court has previously issued an opinion on Convergys's fully briefed motion for summary judgment.[2] (Doc. No. 24). Until its own recent discoveries concerning Plaintiff's employment at Roxy's, Convergys has proceeded without the benefit of this significant evidence. Plaintiff attempts to minimize the seriousness of her conduct, by asserting that Convergys was not prejudiced by the omission. (Plaintiff's Response to Convergys's Motion for Sanctions, PP. 7–10). Specifically, Plaintiff maintains the information is not relevant to any issue in this case, and further that any evidence Convergys might discover in this regard would be inadmissible at trial. (*Id.*). The Court disagrees, however, as evidence that Plaintiff found employment as an exotic dancer almost immediately upon terminating her employment with Convergys is crucial to Convergys's defense against her claims of emotional distress damages. Moreover, Mr. King's testimony regarding Plaintiff's alleged pattern of falsifying claims of inappropriate touching is vital to Convergys's defense against Plaintiff's underlying claims of sexual harassment.[3]

Convergys has been irreparably prejudiced by Plaintiff's discovery violations: the discovery deadline has passed, Convergys has presented and received ruling on a motion for summary judgment, and the Court has no inclination to re-open discovery in order to allow Convergys to delve into areas about which it should have been informed months ago. (Memorandum and Order of Judge Webber, Case No. 4:98CV1884ERW, May 26, 2000, P. 10). Any lesser sanction, such as monetary sanctions or a re-opening of discovery, would neither repair the harm done to Convergys, nor remedy the "direct affront to the court" occasioned by Plaintiff's willful perjury. *See Carey,* 186 F.3d 1016 (affirming district court's entry of default against defendants based upon a finding of egregious conduct by defendants, i.e., repeated lies during the discovery process, and resulting prejudice to plaintiff). As Judge Webber noted, "[u]ltimate sanction cases ultimately rest upon the conviction that no lesser sanction will prevent the offending litigant from continuing to lie or distort the truth so pervasively that it prevents the opposing party from fairly presenting his case or defense." (Memorandum and Order of Judge Webber, Case No. 4:98CV1884ERW, May 26, 2000, P. 10 (internal quotations omitted)). Based on Plaintiff's repeated acts of perjury, to which she admitted only when confronted with the truth by Convergys, this Court has no confidence that Plaintiff would conduct herself in a manner commensurate with fair and just proceedings should it permit this case to proceed to trial. (*Id.*).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Sanctions and to Dismiss and/or Strike Plaintiff's Complaint (Doc. No. 30) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Charlene Knapp's Complaint (Doc. No. 1) is **STRICKEN.**

**IT IS FURTHER ORDERED** that Plaintiff Charlene Knapp's claims against Defendants are **DISMISSED** with prejudice. An appropriate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Convergys is granted until *Wednesday, July 31, 2002,* within which to submit its Bill of Costs and Motion for Attorneys' Fees. Plaintiff will then have until *Wednesday, August 14, 2002,* within which to file her response to said motions.

**IT IS FURTHER ORDERED** that Defendants' Motion to Admit Evidence under Federal Rule of Evidence 412 (Doc. No. 36) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine to Exclude Evidence as to Defendants' Net Worth or Reference to Punitive Damages (Doc. No. 39) is **DENIED** as moot.

---

**2.** Furthermore, because Convergys became aware of Plaintiff's perjury only weeks before the scheduled trial date, Convergys submitted its pretrial compliance in this matter on June 18, 2002. (Doc. No. 31).

**3.** Convergys convincingly argues that at the very least, evidence of Plaintiff's perjury would be admissible as impeachment material.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine to Exclude Evidence of Alleged Past Acts of Sexual Harassment by Chris Bryant (Doc. No. 40) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine to Exclude Certain Evidence Referencing Chris Bryant as Plaintiff's Supervisor (Doc. No. 41) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude Evidence under Federal Rule of Evidence 412 (Doc. No. 44) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Prayer for Punitive Damages (Doc. No. 48) is **DENIED** as moot.